**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4701

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

LEONARD CHARLES BERNARD,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.  Richard L. Voorhees, Senior District Judge.  (5:13-cr-00032-FDW-DSC-1)

Argued:  March 21, 2019                                    Decided:  June 24, 2019

Before GREGORY, Chief Judge, NIEMEYER, and MOTZ, Circuit Judges.

Affirmed by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Motz joined.  Judge Niemeyer concurred in the judgment and wrote a concurring opinion.

**ARGUED:**  Stephen Thomas Meier, STEPHEN T. MEIER, P.L.L.C., Charlotte, North Carolina, for Appellant.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:**  R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

GREGORY, Chief Judge:

Appellant Leonard Charles Bernard was found guilty of one count of possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841 and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924. Bernard now challenges the district court's denial of his pretrial suppression motion to exclude physical evidence and statements under the Fourth and Fifth Amendments to the United States Constitution. Because the district court properly denied Bernard's suppression motion, we affirm his convictions.

## I.

Early in the morning on December 4, 2012, Officer Barry Willis saw Bernard driving eastbound on Interstate 40 in Iredell County, North Carolina, in a white Jeep. Because Bernard appeared to be driving erratically, Officer Willis decided to conduct a traffic stop to determine if Bernard might be impaired or fatigued. When Officer Willis approached the Jeep, he observed Bernard acting nervously, so he requested Bernard's license and registration and asked Bernard if he could pat him down to search for weapons. Bernard consented to the pat-down, and Officer Willis then asked Bernard to join him in the patrol vehicle. Bernard did so, sitting next to Officer Willis uncuffed in the passenger seat.

As Officer Willis was processing Bernard's information to ascertain whether he had outstanding warrants, he experienced technical difficulties and had to use his cell phone to call the main office to conduct the warrant check. Officer Willis estimated that

2

this process took approximately five to seven minutes. During this time, he engaged in casual conversation with Bernard, who informed Officer Willis that he was from Lathrop, California, but had previously lived in Greensboro, North Carolina. Bernard explained that he planned to stay in North Carolina for 2 weeks to visit with friends and repair motorcycles and that he would extend his trip if he found additional motorcycles to repair in North Carolina because business was slow in California. Officer Willis said he found this story suspicious because the weather in California was conducive to riding motorcycles year-round, while people generally did not ride motorcycles in the winter in North Carolina. He asked Bernard if he had any controlled substances or firearms in or on top of his vehicle. Bernard said no.

The central information system verified that Bernard had no outstanding warrants, and Officer Willis issued him a warning ticket for "other hazardous violation." Officer Willis returned Bernard's documents to him, but as Bernard opened the door to exit the police vehicle, Officer Willis asked Bernard if he could answer a few more questions. Bernard said yes. Officer Willis then asked a second time if Bernard had any controlled substances, and Bernard again answered no. Officer Willis next asked Bernard if he could search his Jeep. Bernard said yes, informed Officer Willis that he had a rifle in the car, and also signed a consent-to-search form. This form authorized officers to conduct a complete search of his vehicle, including his luggage and everything inside of it.

After signing the form, Bernard explained that he stored a weapon in a box on top of the Jeep. Another police officer, Trooper Blanton, arrived on the scene and assisted Officer Willis with the search. Officer Willis found a loaded handgun in front of the Jeep

3

and an unloaded rifle in the back. Trooper Blanton then searched the top luggage rack of the Jeep and found containers of mason jars filled with marijuana, wrapped in black plastic bags, and a gun case with a firearm inside.

After Trooper Blanton found the marijuana, Officer Willis immediately arrested Bernard, who had been seated uncuffed in the passenger seat of the patrol car during this search. Without reading him his *Miranda* rights, the officers asked him about the cargo they found, and Bernard admitted possessing three pounds of marijuana.[1] The officers left Bernard's Jeep on the side of the highway after arresting him, and no inventory search was performed.

While transporting Bernard to the detention center, Officer Willis advised Bernard that "there may be some people up there that might want to talk to him and that he might want to think about trying to help himself out." Bernard stated in response that he grew the marijuana himself, that he was planning on selling it for $500 a jar, and that he could make more money selling it in North Carolina than in California. Bernard also replied that "he was strapped for cash, out of a job, and that you gotta do what you gotta do to survive."

Counsel for Bernard filed a motion to suppress the statements and physical evidence. At the hearing, counsel argued that Officer Willis did not have a basis to conduct the traffic stop, noting that there was no evidence of a traffic infraction. Counsel then contended that law enforcement unjustifiably detained Bernard for an extended

---

[1] The Government conceded that this questioning amounted to unwarned custodial interrogation. It did not seek to introduce these statements at trial.

4

period of time during the traffic stop. Counsel further argued that Bernard's consent to search was invalid because he did not consent to the search of the cargo on top of his Jeep. Finally, Counsel argued that the lack of a *Miranda* warning required the suppression of all his statements because Officer Willis's statement constituted custodial interrogation.

The district court denied Bernard's motion to suppress. The court first held that reasonable suspicion existed for the traffic stop, finding Officer Willis's testimony about Bernard's erratic driving to be credible. The court next concluded that the stop was not excessively long. The court found no issue with Officer Willis's request that Bernard accompany him in the police vehicle for the duration of the stop. On the consent issue, the court found that Bernard consented to the search and that his consent included his belongings on top of the Jeep. The court concluded that Bernard was free to end the encounter at the time he consented to the search because "he had received his license and registration back from the officer when he agreed to answer a few more questions. He cracked the door but at the request of the officer agreed to stay on with further questions or conversations." Finally, the court found that Officer Willis's statements in transit to the detention center were "not designed to elicit a response conceding criminality," and that Bernard's "response was not directly responsive to the officer's statement, which was not in an interrogatory form in any event, but rather, it was something on defendant's mind."

On November 18, 2013, a jury convicted Bernard of possession of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D), and possession of

5

a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The district court entered its judgment on October 30, 2017, and the court imposed an aggregate sentence of 62 months' imprisonment and a 5-year term of supervised release.

Bernard timely appealed on November 9, 2017. Counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that there were no meritorious grounds for appeal but questioning whether the district court erred in denying Bernard's motion to suppress and in allowing Officer Willis to testify at trial that Bernard's statements about moving to North Carolina were suspicious. This Court directed the parties to file supplemental briefing "specifically addressing whether the district court erred in concluding that Bernard consented to the search of the cargo on top of his vehicle and that Willis' statement to Bernard that 'there may be some people [at the detention center] that might want to talk to him and that he might want to think about trying to help himself out' was not the functional equivalent of express questioning."[2]

---

[2] Bernard's counsel inexplicably did not brief the consent issue. We decline to find this claim forfeited given the unique context of *Anders*, which requires us to both "afford the indigent the assistance of counsel" *and* "pursue all the more vigorously [our] own review." 386 U.S. at 744–45. We further note that forfeiture rules are designed to encourage parties to focus the issues and present their best arguments upfront, *see Freytag v. C.I.R.*, 501 U.S. 868, 894–95 (1991) (Scalia, J., concurring); these purposes are hardly served by rigid application of forfeiture where appointed counsel fails to follow a clear and mandatory briefing order.

On the merits, however, we affirm. Our review persuades us that Officer Willis reasonably perceived Bernard's consent to reach the containers on top of his vehicle. *See United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005).

## II.

### A.

In reviewing a district court's denial of a motion to suppress, we review the "district court's legal determinations de novo and its factual conclusions for clear error." *United States v. Shrader*, 675 F.3d 300, 306 (4th Cir. 2012). "Because the district court denied the defendant's motion, [this Court] construe[s] the evidence in the light most favorable to the government." *Id.*

### B.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop constitutes a seizure under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). When examining if a traffic stop is lawful, we begin our analysis "when a vehicle is pulled over for investigation of a traffic violation and end [] when the police have no further need to control the scene and inform the driver and passengers, they are free to leave." *United States v. Green*, 740 F.3d 275, 279 (4th Cir. 2014) (internal quotations omitted).

Because a traffic stop is more akin to an investigative detention than a custodial arrest, this Court applies the *Terry v. Ohio* standard in determining the constitutionality of the stop. *Id.* When evaluating a *Terry* stop, this Court must consider (1) whether the officer's actions were justified at their inception and (2) whether his subsequent actions were reasonably related in the scope of circumstances that justified the stop. *Id.* The first prong is satisfied whenever "it is lawful for police to detain an automobile and its

occupants pending inquiry into a vehicular violation." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). The second prong is satisfied when the seizure is limited to the length of time reasonably necessary to issue the driver a citation and determine that the driver is entitled to operate his vehicle. *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008). A police officer can extend the duration of a routine traffic stop only if the driver gives consent or if there is reasonable suspicion that an illegal activity is occurring. *Id.* at 336. In order to assess whether reasonable suspicion is present, we look at the "totality of the circumstances" and the officer must demonstrate a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Vaughan*, 700 F.3d 705, 710 (4th Cir. 2012).

Bernard alleges he experienced Fourth Amendment violations such that the district court should have granted his motion to suppress. We disagree. Officer Willis stated that Bernard was driving erratically and that he initiated a traffic stop in order to ensure that Bernard was not impaired or fatigued. The district court found this testimony to be credible. *See United States v. Palmer*, 820 F.3d 640, 653 (4th Cir. 2016) (explaining that we "particularly defer to a district court's credibility determinations, for it is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress"). Indeed, the record provides no basis to doubt that Officer Willis observed a traffic infraction. "When an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle." *United States v. Williams*, 740 F.3d 308, 312 (4th Cir. 2014). Officer Willis had probable cause here due to the fact that he

8

observed Bernard driving erratically. For these reasons, the first prong of *Terry* is satisfied.

The second prong of *Terry* is satisfied as well. The traffic stop here lasted a reasonable amount of time. There is no indication that Officer Willis took longer than necessary to retrieve information regarding any outstanding warrants. And the traffic stop continued after Officer Willis issued the citation only because Bernard provided both verbal and written consent for the vehicle search. Bernard's motion to suppress could not be granted on Fourth Amendment grounds, as he suffered no cognizable Fourth Amendment violation.

## C.

The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself. U.S. Const. amend. V. In order to comply with the constitutional protections of the Fifth Amendment, when police interrogate an individual who is in their custody, they must provide standard warnings to the individual explaining his rights. For example, before any questioning, law enforcement must explain that he "has the right to remain silent, that any statements he does make may be used as evidence against him and that he has the right to an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

While transporting Bernard to the detention center, Officer Willis advised Bernard that "there may be some people up there that might want to talk to him and that he might want to think about trying to help himself out." It is undisputed that Bernard made self-incriminating statements to law enforcement describing his criminal liability, economic

9

rationales for why he sold drugs, the quantity of drugs he possessed, and how much he hoped to make from selling the drugs in his possession. It is also undisputed that law enforcement personnel never *Mirandized* Bernard. The question before this Court is whether Officer Willis's statement constitutes the equivalent of express questioning and therefore triggers Fifth Amendment protection.

The Supreme Court has explained that *Miranda* "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Interrogation "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* at 300. "Any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of interrogation might be an important factor . . . ." *Id.* at 302 n.8.

The Government argues that Officer Willis's statement did not have the "same coercive effect as conventional interrogation." *United States v. Bell*, 901 F.3d 455, 463-64 (4th Cir. 2018). In light of the extensive friendly conversation between Officer Willis and Bernard, the Government contends, the statement lost the sting of a traditionally coercive custodial interrogation. We find this argument unpersuasive. The American idiom, "You can catch more flies with honey than with vinegar" seems apt here. The Government's arguments imply that coercion must be fueled by fear and that the friendly

10

rapport between Officer Willis and Bernard should undermine any arguments regarding the existence of coercion. As *Miranda* discussed, however, coercion can just as readily be built on hope as it can be built on fear. 384 U.S. at 462.

Given the rapport built between Officer Willis and Bernard, Bernard could reasonably have perceived, and likely did perceive, that the officers were in fact on his side. It is also very likely that, upon hearing Officer Willis's statement asking him to be forthcoming, Bernard's subsequent self-incriminating statements were made out of a hopeful and uninformed expectation of leniency if he was cooperative. His experience with law enforcement during this encounter had generally been positive, and he was likely hoping for the best.

Officer Willis should have known that Bernard was not reasonably likely to stay silent after he advised him to confess his crimes. Bernard had already provided plenty of information to Officer Willis, including self-incriminating statements he made in response to questions immediately after his arrest, which questions the Government conceded were interrogation. Given this context, Officer Willis should have known that his invitation to cooperate was reasonably likely to induce Bernard to provide him with even more self-incriminating information. Officer Willis's statement thus constitutes the functional equivalent of interrogation and triggered the need for *Miranda*'s protection.

Nonetheless, the failure to administer a *Miranda* warning constitutes harmless error. Fed. R. Crim. P. 52(a). A constitutional error is harmless if it is clear that a rational factfinder would have found the defendant guilty absent the error—i.e., Bernard's unconstitutionally elicited statements. *United States v. Giddins*, 858 F.3d 870,

11

885 (4th Cir. 2017). In making this determination, this Court considers: (1) the importance of the statement to the Government's case; (2) the impact on credibility of other evidence; and (3) the admission of prejudicial evidence based solely on the admission of the statement. *Id.* at 886.

First, the self-incriminating statements Bernard made are of small consequence given the amount of marijuana recovered and the guns found in his vehicle after he consented to the search by Officer Willis. The Government still had a strong case, and any reasonable jury would have been convinced of Bernard's culpability even in the absence of the self-incriminating statements. Second, the lack of statements would not undermine the credibility of the physical evidence in this case. Even without the self-incriminating statements, a reasonable factfinder would readily have found Bernard guilty given the physical evidence found in his vehicle. Law enforcement officials recovered a rifle, two handguns, and three pounds of marijuana in Bernard's vehicle. This evidence overwhelmingly supported Bernard's drug-trafficking and firearm convictions. Finally, there was no admission of any prejudicial evidence based solely on the self-incriminating statements. Consequently, the failure to administer a *Miranda* warning constitutes harmless error. The Fifth Amendment thus cannot provide a basis for relief in this case.

## III.

In sum, the district court properly found that Bernard's motion to suppress physical evidence and statements were without merit. We have found no cognizable

12

Fourth Amendment violation warranting suppression.  And despite the *Miranda* violation, an overwhelming amount of physical evidence was properly seized that would still inculpate Bernard in the eyes of any reasonable factfinder.  The judgment of the district court is therefore upheld.

*AFFIRMED*

NIEMEYER, Circuit Judge, concurring in the judgment:

After uncovering 53 mason jars filled with marijuana during a consensual search of Leonard Bernard's vehicle, officers arrested Bernard. And while transporting Bernard to the detention center, one officer said to him that "there may be some people up there that might want to talk to him and that he might want to think about trying to help himself out." In response, Bernard explained to the officer that he grew the marijuana and intended to sell it for $500 a jar, as he was in need of money.

I would conclude that the officer's statement was only friendly advice *about future conduct* — consistent with the manner in which the officer and Bernard had been chatting freely before Bernard's arrest — and was not reasonably likely to elicit an inculpatory response at that time. Thus, Bernard was not subjected to "interrogation" while en route to the detention center, and there was no reason for the district court to suppress his voluntary statement. *See Rhode Island v. Innis*, 446 U.S. 291, 302–03 (1980) (holding that it was not interrogation when one officer said to another in the defendant's presence that a missing shotgun was near a school for handicapped children and expressed fear that one of the children might find the weapon and hurt themselves, in response to which the defendant showed the officers where the gun was located). Indeed, like in *Innis*, "the entire conversation" at issue here "appears to have consisted of no more than a few off hand remarks," and I cannot conclude that the officer "should have known that [Bernard] would suddenly be moved to make a self-incriminating response." *Id*. at 303. Accordingly, I disagree with the analysis included in the first half of Part II.C. Nonetheless, I concur in the judgment.

14