**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50427**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: August 28, 2024 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| RICKY DEAN SCHEFFELMAN, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Benjamin J. Cluff, District Judge.

Judgment of the district court, <u>affirmed</u>.

Ricky D. Scheffelman, Boise, pro se appellant.

Hon. Raúl R. Labrador, Attorney General; Amy J. Lavin, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Ricky Dean Scheffelman appeals from the district court's judgment of conviction. Scheffelman claims the district court erred by denying his motion to suppress and motion to reconsider. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Law enforcement stopped Scheffelman for speeding. Scheffelman claimed he was coming from Salt Lake City, through Nevada, and heading north towards Montana but ended up in Twin Falls. Scheffelman stated he was lost and stopped in the hospital parking lot looking for a map. Scheffelman was unable to produce his driver's license, a valid registration, or proof of insurance. The officer contacted dispatch and requested a drug dog. Scheffelman claimed the car belonged to his girlfriend, and he provided a temporary registration and an identification card. The officer returned to his patrol car and asked if dispatch heard his request for a drug dog, then relayed

1

Scheffelman's information using the identification card provided. The officer learned Scheffelman had a non-extraditable warrant out of California and prior drug charges. Scheffelman could not provide a phone number for the registered car's owner and stated his license was suspended. While waiting for dispatch to confirm Scheffelman's suspension, the officer asked to search the vehicle. Scheffelman agreed. Subsequently, the officer discovered a pipe on the passenger seat and placed Scheffelman in the patrol car. The officer told Scheffelman he was not under arrest and continued to search the vehicle. The officer then discovered a large quantity of methamphetamine.

The State charged Scheffelman with trafficking in methamphetamine, Idaho Code § 37-2732B(a)(4)(B), possession of drug paraphernalia, I.C. § 37-2734A(1), and driving without privileges, I.C. § 18-8001(1)(a). Scheffelman filed a motion to suppress, arguing the stop was illegally extended and his consent to search was involuntary. At the suppression hearing, the officer testified that Scheffelman's abnormal driving, nervous demeanor, and responses were indicative of a person involved in criminal activity. The officer described seeing a basket of laundry in the front seat, Scheffelman, a dog in the backseat, and a temporary Utah registration on the vehicle. The officer explained these items are indicia of criminal activity, and Scheffelman appeared to be missing several teeth and his face appeared to be sunken in, both of which are indicators of drug use. Following the suppression hearing, the district court denied Scheffelman's motion, holding that the stop was not unlawfully extended even though the officer deviated from the purpose of the stop for eleven seconds to call for a drug dog, Scheffelman's consent was voluntary and, alternatively, that the evidence would have been inevitably discovered. Scheffelman filed a motion to reconsider asserting the original purpose of the stop ended before the officer obtained consent to search. The district court denied Scheffelman's motion for reconsideration.

Scheffelman entered a conditional guilty plea to trafficking in methamphetamine and driving without privileges, reserving his right to appeal the denial of his motion to suppress and motion to reconsider. The State dismissed the possession of paraphernalia charge. Scheffelman appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). Determinations of reasonable suspicion are reviewed de novo. *State v. Bonner*, 167 Idaho 88, 93, 467 P.3d 452, 457 (2020).

## III.

## ANALYSIS

Scheffelman asserts the district court erred by denying his motion to suppress and motion to reconsider. Scheffelman argues the traffic stop was unlawfully extended, his consent was involuntary, and the inevitable discovery rule was inapplicable. The State argues the district court did not err in finding the traffic stop was not prolonged and that Scheffelman provided valid consent to search. In addition, the State asserts the district court did not err by determining the contraband would have been inevitably discovered through an inventory search.

### A.     Traffic Stop

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. The stop of a vehicle by law enforcement constitutes a seizure of its occupants to which the Fourth Amendment applies. *State v. Linze*, 161 Idaho 605, 607-08, 389 P.3d 150, 152-53 (2016). The reasonableness of such a stop is analyzed as an investigative detention. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). An investigative detention does not require an officer to have probable cause to believe that a crime has been committed, but the detention must be based on something more than a mere hunch or inchoate and unparticularized suspicion. *State v. Gonzales*, 165 Idaho 667, 673, 450 P.3d 315, 321 (2019). The detention must be supported by specific, articulable facts, that the detained party has committed, is committing, or is about to commit a crime. *State v. Randall*, 169 Idaho 358, 363, 496 P.3d 844, 849 (2021). Whether an officer's suspicion is reasonable is evaluated under the totality of the circumstances. *United States*

3

*v. Cortez*, 449 U.S. 411, 417 (1981). Further, the detention must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968).

Where a detention is justified by a traffic infraction, "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are--or reasonably should have been--completed." *State v. Hale*, 168 Idaho 863, 867, 489 P.3d 450, 454 (2021) (quoting *Rodriguez*, 575 U.S. at 354). An officer may need to take certain negligibly burdensome precautions, such as checking for outstanding warrants, in order to complete his mission safely. *Rodriguez*, 575 U.S. at 356. The purpose of a stop is not permanently fixed, however, at the moment the stop is initiated, for during the course of the detention there may evolve suspicion of criminality different from that which initially prompted the stop. *State v. Sheldon*, 139 Idaho 980, 984, 88 P.3d 1220, 1224 (Ct. App. 2003); *accord Hale*, 168 Idaho at 868, 489 P.3d at 455 ("[A] traffic stop may be permissibly extended if, during the course of effectuating the stop's mission, officers develop reasonable suspicion of some unrelated criminal offense."). The Idaho Supreme Court noted in *Linze* the broad holding in *Rodriguez* that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. *Linze*, 161 Idaho at 608, 389 P.3d at 153. It concluded that this rule is both broad and inflexible and applies to all extensions of traffic stops including those that could reasonably be considered de minimis. *Id.* Interpreting *Rodriguez*, the Court ruled:

> The stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop, to which that reasonable suspicion is related. However, should the officer abandon the purpose of the stop, the officer no longer has that original reasonable suspicion supporting his actions. Indeed, when an officer abandons his or her original purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the Fourth Amendment. This new seizure cannot piggy-back on the reasonableness of the original seizure. In other words, unless some new reasonable suspicion or probable cause arises to justify the seizure's new purpose, a seized party's Fourth Amendment rights are violated when the original purpose of the stop is abandoned (unless that abandonment falls within some established exception).

*Linze*, 161 Idaho at 609, 389 P.3d at 154. However, the Court distinguished *Linze* on two bases. First, the Court recognized that "*Linze* never addressed what would happen if the traffic stop led to reasonable suspicion that the driver was engaged in another crime." *State v. Warren*, 169 Idaho 588, 593, 499 P.3d 423, 428 (2021). Where there is reasonable suspicion of another crime, a

detention may be prolonged to confirm or dispel that suspicion. *See Hale*, 168 Idaho at 868, 489 P.3d at 455.

Waiting for a drug dog to arrive and conduct a drug sniff is not part of the purpose or mission of a traffic stop. *Hale*, 168 Idaho at 867, 489 P.3d at 454. Thus, the dog must arrive, and the sniff must be conducted, before the tasks tied to the stop are--or should have been--reasonably completed. The critical question is whether the dog sniff prolonged or added time to the traffic stop. *State v. Karst*, 170 Idaho 219, 227, 509 P.3d 1148, 1156 (2022). "Whether the officer 'abandoned' the traffic stop is not determinative." *Id.* at 223, 509 P.3d at 1152. Even a de minimis detour or deviation from the purpose of the stop violates the Fourth Amendment. *Id.* at 227, 509 P.3d at 1156. "[A] dog sniff unlawfully prolongs the stop where the officer detours from the stop to radio for a drug dog, even if it only extends the seizure by mere seconds." *State v. Riley*, 170 Idaho 572, 579, 514 P.3d 982, 989 (2022). Law enforcement must be reasonably diligent in pursuing the mission of the traffic stop. *Hale*, 168 Idaho at 867, 489 P.3d at 454. Law enforcement does not earn bonus time for expeditiously completing tasks. *Karst*, 170 Idaho at 228, 509 P.3d at 1157.

### 1.      Ordinary incidental inquiries

Scheffelman asserts the district court erred because the officer continued to contact dispatch for information; thus, prolonging the stop. Scheffelman argues the officer was never concerned with writing a citation and continued probing into other matters until he received permission to search the car. Scheffelman claims the officer had information five minutes into the traffic stop that provided everything necessary to complete the citation.

The district court determined that, "even prior to the offending deviation, [the officer] developed fresh reasonable suspicion that [Scheffelman] had potentially committed, or was presently committing, multiple potential other crimes." Specifically, the district court found the officer developed reasonable suspicion to investigate Scheffelman's license status, whether he lawfully possessed the vehicle, and whether Scheffelman should be arrested based on outstanding warrants. The district court held that, aside from the single, eleven-second deviation, the officer pursued inquiries during the traffic stop based on reasonable articulable suspicion into one or more of these crimes. We agree.

The officer's questions about Scheffelman's license, registration, and warrant status did not extend the traffic stop because they were part of the stop's mission. A traffic stop's mission

includes making ordinary inquiries incident to the stop. *Riley*, 170 Idaho at 578, 514 P.3d at 988. An officer does not stray from the traffic stop's mission by merely following up on or verifying information provided from a license or registration check. *Hale*, 168 Idaho at 869, 489 P.3d at 456 (holding that officer did not extend the traffic stop by confirming the driver's permission to operate vehicle registered to another person). Scheffelman failed to produce any proof of insurance, a valid registration, or a driver's license. Scheffelman told the officer the vehicle belonged to his girlfriend but could not provide any valid contact information for the claimed owner. Despite Scheffelman's assertions that he did not indicate any discrepancies,[1] his claim regarding the vehicle's ownership was insufficient and merited police investigation. Ultimately, dispatch informed the officer that Scheffelman's license was suspended, giving the officer probable cause to arrest Scheffelman. The officer diligently pursued the related tasks and, thus, the officer did not unlawfully prolong the stop by verifying that information. An officer is entitled, as an incident to the stop, to follow up on the identity of the detainee and any limits on the detainee's ability to engage in otherwise constitutionally protected conduct, such as interstate travel.

## 2. Deviation and timeline

Upon returning to his patrol car, the officer sought to confirm that dispatch heard his original request for a drug dog before he relayed Scheffelman's information. The district court determined the officer's request for a drug dog constituted a deviation from the original mission of the traffic stop because the inquiry was not related to Scheffelman's speed or possession of the vehicle, and at the time it was made, the request was not supported by reasonable suspicion. The district court found this deviation, from timestamp 15:05:40 to 15:05:51, totaled eleven seconds. Scheffelman argues there were multiple deviations totaling closer to two minutes. The State asserts that Scheffelman misconstrues the timeline and inappropriately adds time that does not constitute a deviation.

---

[1] Scheffelman argues the address on his identification card was the same as the temporary registration, the car was not reported stolen, and it was full of his belongings; thus, without discrepancies in the available information, the police could not investigate further. Scheffelman cites to *State v. Hale*, 168 Idaho 863, 489 P.3d 450 (2021) to support this contention; however, given the circumstances of the stop, the officer had independent reasonable suspicion to investigate. Moreover, the purported matching registration is not in the record and Scheffelman does not provide adequate citations to the record; we will not search the record for error.

6

Scheffelman disputes the district court's time calculations and argues it erred applying *Riley* instead of *Karst*. In *Karst*, the Idaho Supreme Court reiterated that the critical question according to *Rodriguez* is whether a deviation "prolonged" or "added time to" the overall duration of the traffic stop. *Karst*, 170 Idaho at 227, 509 P.3d at 1156. An officer's nineteen-second radio request for a drug dog added time to the stop and, thus, impermissibly prolonged the seizure more than it should have been to complete the mission. *Id.* Relying on *Linze*, the Idaho Supreme Court determined the *Rodriguez* rule is not concerned with when the officer deviates from the original purpose of the traffic stop, it is concerned with the fact that the officer deviates at all. *Karst*, 170 Idaho at 227, 509 P.3d at 1156. A month later, the Idaho Supreme Court clarified the limits on an unconstitutional seizure announced in the *Karst* decision. *Riley*, 170 Idaho at 578-79, 514 P.3d at 988-89. In *Riley*, there was an initial deviation when an officer asked the defendant if there were controlled substances hidden in the vehicle. *Id.* at 576-77, 514 P.3d at 986-87. Later, the officer deviated again when he spoke with backup upon their arrival. *Id.* at 577, 514 P.3d at 987. The critical question was whether the deviations prolonged or added time to the overall duration of the traffic stop. The Court held these deviations did not unconstitutionally prolong the stop because, even without the deviations, the drug dog would have alerted before the citations were complete. *Id.* at 580, 514 P.3d at 990. Therefore, when the timeline of the stop's mission is not prolonged by a deviation, no constitutional violation occurs.

The district court determined that when the officer initially returned to his patrol car, he had reasonable suspicion to investigate the other issues and those inquiries necessitated additional time. The district court reviewed the dashcam video where the officer spoke with dispatch about Scheffelman's driving status, outstanding warrants, and the vehicle's owner. The district court analyzed *Riley* and held that if "an improper deviation from the initial purpose of the stop was brief enough that the new grounds for a search would have been discovered with or without the improper deviation, the deviation does not render everything after it violative of [Fourth] Amendment seizure protections" (footnote omitted). The district court noted a brief deviation must be shorter in time than the period between the discovery of new grounds to search and the point where the purpose for the original stop would have been satisfied.

Before the officer received updated information about Scheffelman's suspended license, Scheffelman consented to a search of his vehicle. The district court determined Scheffelman consented to the search, and forty-nine seconds later, dispatch informed the officer that information

7

regarding Scheffelman's suspended license had been sent to his patrol car's computer. The district court held that even with the deviations, just like in *Riley*, the new ground to search arose before the reason for the initial stop had been satisfied.

Scheffelman argues the time should include the officer walking back to his patrol car and the time during which dispatch conveyed information to the officer. These arguments are without merit. Only deviations from a stop's purpose may evidence an unconstitutional seizure, and an officer walking is part of the reasonable time tied to the seizure. Scheffelman's assertions do not accurately reflect the video recording that establishes the officer only spent eleven seconds inquiring about a drug dog's availability. There was no evidence and no findings in the district court that the officer was not still engaged in processing the traffic violation when he received the follow-up information from dispatch. Scheffelman does not show the officer stopped processing the traffic violation or otherwise deviated from the mission during that time. Even if the additional time of dispatch informing the officer about the drug dog's unavailability was added, the total time of the deviations would be, at most, twenty-three seconds.

Scheffelman claims dispatch sent information to the officer's computer at 15:17:48 and if the officer had been in the patrol car instead of following up on matters not related to a speeding citation, he would have received the information before he asked for consent to search. The officer exited the patrol car after learning the warrant was not extraditable at 15:15:25, and then asked Scheffelman if he had a phone number for the car's owner, which he did not. After Scheffelman admitted his license was suspended, the officer, between 15:16:58 and 15:17:13, requested dispatch clarify the reason through a driver's query. At 15:17:48, the officer was still standing outside talking to Scheffelman about his odd travel route. The district court found that questioning Scheffelman about his itinerary was entirely proper and rejected the argument that if the officer had been in his patrol car he would have known the dispatch information sooner. We agree with the district court. An officer may ask about a driver's purpose and destination during a traffic stop so long as the inquiries do not prolong the stop. *State v. Hays*, 159 Idaho 476, 480, 362 P.3d 551, 555 (Ct. App. 2015). Even so, here the district court found that the officer had reasonable suspicion beyond the initial speeding basis for the stop. The officer was not required to return to his computer and await the report; instead, the officer permissibly talked to Scheffelman while he waited.

Scheffelman claims the district court erred by calculating the time at the point the officer asked to search, not when Scheffelman provided consent. The record belies Scheffelman's argument. The two officers were standing by Scheffelman while he stood near the trunk of the car. At 15:18:34, the officer asked if he could search. Scheffelman turns at 15:18:40 and makes an inaudible comment which he and the officer confirmed at the hearing was "I guess so." The district court found that Scheffelman consented to the search between 15:18:38 and 15:18:45, then at approximately 15:19:34, dispatch contacted the officer. The district court concluded the officer was advised at 15:19:34 of Scheffelman's suspended driving status. The district court found there was, at a minimum, a full forty-nine seconds between Scheffelman's consent to a search and the return of his driving status information. Accordingly, the district court held that even without the eleven-second deviation, Scheffelman's consent to search would have occurred thirty-eight seconds before the driving status results were received. Even if we were to accept Scheffelman's argument that the total time for the drug dog conversation was twenty-three seconds, it was within the forty-nine seconds. Thus, the forty-six seconds between consent and notification gives the State the least leeway in the deviation calculation. *See Riley*, 170 Idaho at 577, 514 P.3d at 987 (construing the deviation calculation against the State when it could have been as brief as twelve seconds but at most twenty seconds). Whether the officer requested the drug dog before submitting Scheffelman's information to dispatch or at the end of the discussion, the eleven second, or at most twenty-three-second, deviation would not have altered the time it took dispatch to run Scheffelman's information and follow up on the additional tasks. Thus, the district court could have calculated the timeline more stringently against the State; however, even considering the greatest deviation, the timeline shows the officer would not have been informed about Scheffelman's status for at least another twenty-three seconds and, thus, the stop was not unlawfully extended.

### 3. Consent

Valid consent is a well-established exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Barker*, 136 Idaho 728, 730, 40 P.3d 86, 88 (2002). The courts have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so. *State v. Rios*, 160 Idaho 262, 265, 371 P.3d 316, 319 (2016).

9

The district court held that Scheffelman voluntarily consented to the search and, therefore, the search was reasonable. In addition, the district court determined, "there [was] no improper prolongation of the stop, since the consent to search necessarily includes an extension of time to complete such search." The district court cited nonbinding case law to support its holding. *United States v. Salkil*, 10 F.4th 897, 899 (8th Cir. 2021) (holding that once police lawfully secured consent to search, any delay occasioned by the search did not constitute an unlawful extension of the seizure); *United States v. Rivera*, 570 F.3d 1009, 1013-14 (8th Cir. 2009) (holding that a trooper may extend a traffic stop beyond its normal completion if the encounter has become consensual). Reviewing cases from other jurisdictions support the district court's holding. *See United States v. Mathes*, 58 F.4th 990, 993 (8th Cir. 2023) (requesting consent to search required only a few seconds and did not prolong stop beyond time tied to traffic stop seizure); *United States v. Bernard*, 927 F.3d 799, 805 (4th Cir. 2019) (finding no Fourth Amendment violation when a traffic stop continued after an officer issued the driver a citation because the driver consented to the search of his vehicle); *United States v. Torres*, 786 F. App'x 726, 731 (10th Cir. 2019) (explaining that an officer may prolong a traffic stop for unrelated investigations if the defendant consents to the extension); *United States v. Martinez*, 434 F. Supp. 3d 1208, 1215 (D.N.M. 2020) (same); *People v. Chavez-Barragan*, 379 P.3d 330, 336 (Colo. 2016) (explaining a longer detention or a search is permissible if the individual's consent has been obtained); *State v. Asbach*, 871 N.W.2d 820, 824 (N.D. 2015) (holding that when a motorist gives consent to search his vehicle, he necessarily consents to an extension of the traffic stop while the search is conducted). Accordingly, law enforcement may seek consent to search a vehicle if the questioning does not prolong the stop, and the time to conduct a consensual search does not prolong the stop.

The officer initially checked Scheffelman's information using his identification card and the vehicle's identification number to run a driver's check. Unable to contact the registered owner, the officer walked back over to Scheffelman and asked if he had another phone number for the owner. As noted, it was at this time that Scheffelman admitted his license was suspended and the officer radioed dispatch to confirm. While waiting, the officer asked Scheffelman for consent to search the vehicle. The officer had already unsuccessfully tried to contact the vehicle's owner to confirm Scheffelman was in lawful possession and learned Scheffelman's warrant was non-extraditable. The officer was waiting for Scheffelman's driving status. Contemporaneous with

10

that waiting period, the officer received consent to search the vehicle. The request to search did not extend the stop.

Once Scheffelman consented, the officer was no longer bound to solely and diligently pursue the traffic mission because he had an independent mission with an independent timeline. Scheffelman's consent provided justification to reasonably extend the stop to conduct a search. Unless and until Scheffelman revoked his consent to the search, the officer was not constricted to the traffic mission.

Scheffelman also argues that his consent was involuntary. Scheffelman argues that the number of officers and patrol cars, repeated questions unrelated to the basis for the stop, and not being advised that he could decline to consent rendered the situation coercive and his consent involuntary. Principally, Scheffelman argues the district court erred by preventing testimony about his mental health problems and how that rendered him confused and his consent involuntary. The State argues the district court correctly sustained the State's objections to Scheffelman's attempt, without proper foundation, to link his mental health problems to his conduct during the stop, namely his consent.

The State has the burden of demonstrating freely given consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Consent must be unequivocal, specific, and freely and intelligently given. *State v. Harrison*, 160 Idaho 649, 652, 377 P.3d 1112, 1115 (Ct. App. 2016). An individual's consent is involuntary if his will has been overborne and his capacity for self-determination critically impaired. *Schneckloth*, 412 U.S. at 225. A determination of voluntariness is not dependent on the presence or the absence of a single controlling criterion. *State v. Garcia*, 143 Idaho 774, 778, 152 P.3d 645, 649 (Ct. App. 2006). Rather, the court considers the totality of the circumstances and uses several factors to determine voluntariness including the number of officers involved in the encounter, the location, and circumstances of the consent, including whether consent was obtained at night, whether the officers retained the individual's identification, whether the individual was free to leave, and whether the individual knew he had the right to refuse to consent. *Id.*

In determining voluntariness, if the trial court's finding of fact is based on reasonable inferences that may be drawn from the record, it will not be disturbed on appeal since our standard

11

of review requires that we accept a trial court's factual findings unless they are clearly erroneous. *Id.* at 778-79, 152 P.3d at 649-50. Findings will not be deemed clearly erroneous if they are supported by substantial evidence in the record. *State v. Benson*, 133 Idaho 152, 155, 983 P.2d 225, 228 (Ct. App. 1999); *see State v. Jaborra*, 143 Idaho 94, 97-98, 137 P.3d 481, 484-85 (Ct. App. 2006). Generally, courts review questions of relevance de novo. *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

Scheffelman asserts the district court erred by finding his consent was voluntary and by precluding his testimony regarding his mental health as it may bear on the voluntariness of his consent. Scheffelman admits he consented to a search through his "I guess so" statement to the officer and does not argue he revoked consent. Scheffelman asserts his consent was nevertheless involuntary because his education and mental disorders affected his consent; there were multiple officers involved; he was subjected to repeated questioning and a demeaning frisk; and he was not advised of his right to refuse consent. The district court determined Scheffelman's clear and unequivocal statement evidenced consent and found there were no factors tending to show the consent was involuntary. The district court found there were only two officers, both were extremely professional and solicitous, and nothing in the officers' interactions with Scheffelman would reasonably overbear or impair his capacity to consent.

During the suppression hearing, Scheffelman testified to his bipolar disorder, ADHD, and schizophrenia, but the district court sustained the State's objection to his testimony concerning how those disorders affected his ability to consent. The district court held Scheffelman had not established foundation or a medical background sufficient to provide testimony on the effects of mental illness on consent. Scheffelman argues his testimony was relevant and highly probative to his subjective state of mind. By not considering his testimony, Scheffelman claims the district court failed to consider the totality of the circumstances. The district court correctly held Scheffelman did not lay adequate foundation as to his personal knowledge regarding the effects of his mental illness relevant to voluntary consent.

Scheffelman further asserts the district court erred by sustaining the State's objections because the Idaho Rules of Evidence do not apply during a suppression hearing. In support of his contention, Scheffelman cites I.R.E. 101(e)(1) and 104(a). Rule 104(a) states that when a court is deciding a preliminary question about whether evidence is admissible it is not bound by evidence

12

rules. Other than the above-mentioned rules of evidence, Scheffelman does not provide any case law or cite any statute or rule that holds that the rules of evidence do not apply during a suppression hearing. With the exception of some delineated exceptions not applicable here, the Idaho Rules of Evidence generally govern the admission of *all evidence* in the courts of this State except as otherwise provided in Rule 101(e). I.R.E. 101(b); *State v. Meister*, 148 Idaho 236, 240, 220 P.3d 1055, 1059 (2009).

Scheffelman has failed to show that the district court erred by precluding him from attempting to link the voluntariness of his consent to his mental health. Scheffelman has also failed to show that the district court erred in finding that, under the totality of the circumstances, his consent was voluntary.[2]

## IV.
## CONCLUSION

The district court did not error by denying Scheffelman's motion to suppress and motion to reconsider. The judgment of the district court is affirmed.

Judge LORELLO and Judge TRIBE **CONCUR**.

---

[2]     In light of the foregoing, we need not address the issue of inevitable discovery.