**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 48578**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, May 2021 Term |
| | ) | |
| v. | ) | Opinion Filed: June 22, 2021 |
| | ) | |
| WILLIAM JOSEPH HALE, II, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Jason D. Scott, District Judge.

The decision of the district court is affirmed.

Eric D. Frederickson, State Appellate Public Defender, Boise, for Appellant. Jenevieve C. Swinford argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Justin R. Porter argued.

_____

BURDICK, Justice.

This case concerns whether a law enforcement officer unlawfully prolonged a traffic stop by inquiring as to a driver's permission to operate the stopped vehicle. William Joseph Hale, II, appeals his judgment of conviction for two counts of felony possession of a controlled substance and one count of possession of drug paraphernalia. After a drug-detecting dog alerted on the car Hale had been driving, law enforcement conducted a warrantless search of the vehicle, discovering various controlled substances and drug paraphernalia. Hale moved to suppress the evidence resulting from the search, arguing that the responding officer had impermissibly prolonged the stop while waiting for the drug-detecting dog by inquiring about Hale's permission to operate the vehicle. The Ada County district court denied Hale's motion, reasoning that the officer's questions were within the permissible scope of the traffic stop. The Court of Appeals affirmed, concluding that the questions regarding Hale's permission to operate the

1

vehicle comported with the Fourth Amendment. This Court granted review. For the reasons stated below, we affirm the district court's decision.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Shortly after 9:00 pm on April 24, 2017, a law enforcement officer on patrol with the Garden City Police Department observed a car parked by itself in the unlit parking lot of a closed business. When the officer drove by the vehicle, he noticed it lacked a front license plate, piquing his suspicion. The officer turned around to follow the vehicle as it exited the parking lot, observing that it also lacked a rear license plate. Shortly thereafter, the officer pulled the vehicle over in the parking lot of a nearby convenience store.

Subsequently, the officer approached the vehicle and the driver handed him an Idaho driver's license identifying himself as William Joseph Hale, II. The officer explained to Hale the reasons he had been pulled over: first, for being in the parking lot of a closed business;[1] and second, for failing to display license plates or a temporary registration permit. Hale pointed out that he did, in fact, have a temporary permit displayed in the rear window of the vehicle. The officer confirmed the presence of the temporary permit, but did not inspect it at that time, asking instead if the registration belonged to Hale. Hale responded by saying the vehicle belonged to his friend ("the owner") and that he was merely borrowing it. The officer then asked Hale to provide proof of insurance for the vehicle. Hale did not know if the vehicle was insured or not but did find a registration card after sifting through documents in the glove box. While Hale searched for proof of insurance, the officer asked some follow-up questions including whether Hale had any weapons or drugs in the vehicle and the owner's name. As to the owner, Hale told the officer his full name and gestured while saying, "he lives right across from there." With Hale unable to provide an insurance card, the officer returned to his vehicle to run standard license, registration, and warrant checks.

By the time the officer returned to his vehicle to run those checks, roughly three to five minutes had elapsed. At that point, before conducting the license, registration, and warrant checks, the officer requested a drug-detecting dog to be dispatched to the stop. The routine checks did not raise any concerns nor indicate that Hale had outstanding warrants. However, the officer noted that the registration provided by Hale listed a Boise address for the owner, which

---

[1] Although he cited it as a reason for pulling Hale over, the officer never returned to this line of inquiry during the remainder of the traffic stop.

conflicted with the officer's understanding that Hale stated the owner lived in Garden City. Based on this discrepancy, the officer returned to question Hale about who owned the vehicle and requested the owner's phone number to confirm Hale's permission to drive the car. Hale provided the owner's phone number and the officer contacted him after several attempts, confirming Hale had permission to drive the vehicle and that the vehicle did not have insurance.

At some point prior to initiating the phone call, at approximately 9:14 p.m., the officer started to write Hale a ticket for failure to provide proof of insurance. Meanwhile, during the officer's phone conversation with the owner, the drug-detecting dog and its handler arrived at the stop to sniff around the vehicle. After calling the owner, the officer returned to issuing Hale a citation for failure to provide proof of insurance. Unbeknownst to the officer, while he finished the ticket, the drug-detecting dog alerted to the presence of drugs in the car being driven by Hale. The officer then approached Hale for a third time to verify the address information on Hale's driver's license. Before he was able to make contact with Hale, however, the handler informed the officer of the alert and presence of paraphernalia in the vehicle. During the subsequent warrantless search of the vehicle, the officers discovered methamphetamine and hydrocodone in addition to the previously discovered paraphernalia.

After the traffic stop, the State charged Hale with two counts of possession of a controlled substance in violation of Idaho Code section 37-2732(c) and one count of possession of drug paraphernalia in violation of Idaho Code section 37-2734A. Hale moved to suppress the evidence gleaned from the warrantless search of the car, arguing that law enforcement did not have a reasonable basis to stop him and that the stop was unlawfully prolonged. Prior to oral argument, Hale withdrew his argument that the initial stop was unlawful, and proceeded only with the argument that the stop was unlawfully prolonged.

The district court heard oral argument on the motion to suppress on January 18, 2018, and issued a written order denying Hale's motion on January 26, 2018. The district court reasoned that the key issue in the case was whether law enforcement had unlawfully prolonged the stop by inquiring into Hale's authorization to drive the stopped vehicle. Answering that question in the negative, the district court ruled "that an officer may, without unlawfully prolonging a traffic stop, take reasonable steps to verify a non-owner driver's claim of permission to drive the stopped vehicle, at least when there is some reason to be skeptical of that claim." In addition, the district court concluded that the skepticism about a non-owner driver's

claim of permission need not rise to the level of reasonable suspicion to justify an inquiry into the truth of that claim.

Following trial, a jury found Hale guilty on all three counts. The district court sentenced Hale to two concurrent eight-year sentences with two-and-one-half years fixed for the possession charges and to time served with respect to the paraphernalia charge. Hale timely appealed.

Hale's appeal was assigned to the Idaho Court of Appeals, which issued an opinion affirming the district court's denial of Hale's motion to suppress on May 13, 2020. *State v. Hale*, No. 46766, 2020 WL 2465744 (Ct. App. May 13, 2020). The Court of Appeals adopted substantially the same reasoning as the district court, holding "that during the course of a traffic stop an officer may take reasonable steps to verify a . . . claim of permission to drive the stopped vehicle where there is reason to be skeptical of that claim." *Id.* at *4.

Hale petitioned for review by this Court, arguing that the district court's and Court of Appeal's decisions expanded the scope of ordinary inquiries incident to a traffic stop in conflict with the United States Supreme Court's holding in *Rodriguez v. United States*, 575 U.S. 348 (2015). This Court granted review.

## II.    ISSUE ON APPEAL

Did the district court err in denying Hale's motion to suppress by concluding that the post-stop verification of Hale's permission to operate the vehicle was an ordinary inquiry incident to the stop?

## III.    STANDARD OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Jeske*, 164 Idaho 862, 867, 436 P.3d 683, 688 (2019) (quoting *State v. Schmierer*, 159 Idaho 768, 770, 367 P.3d 163, 165 (2016)). In reviewing a motion to suppress, this Court employs a bifurcated standard of review. *State v. Danney*, 153 Idaho 405, 408, 283 P.3d 722, 725 (2012) (citing *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009)). "This Court will accept the trial court's findings of fact unless they are clearly erroneous but will freely review the trial court's application of constitutional principles to the facts found." *Id.* A trial court's findings of fact that are supported by substantial and competent evidence are not clearly erroneous. *Id.*

4

## IV. ANALYSIS

The Fourth Amendment to the United States Constitution mandates that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[2] U.S. Const. amend IV. "The stop of a vehicle by law enforcement constitutes a seizure of its occupants to which the Fourth Amendment applies." *State v. Linze*, 161 Idaho 605, 608, 389 P.3d 150, 153 (2016) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). Stopping a vehicle and seizing its occupants to investigate a traffic violation is permissible under the Fourth Amendment "so long as the seizing officer had reasonable suspicion that a violation had occurred." *Id.* Thus, like a *Terry* stop, the "tolerable duration of police inquiries in the traffic-stop context" is measured in reference to the stop's "mission." *Rodriguez*, 575 U.S. at 354 (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)); *see also Terry v. Ohio*, 392 U.S. 1 (1968) (holding that law enforcement officers may conduct a brief investigatory detention and search for weapons with reasonable suspicion, so long as the scope of the search is limited to the purpose for which it was initiated).

Law enforcement's mission in conducting a traffic stop includes, but is not limited to, addressing the traffic violation that precipitated the stop and determining whether to issue a traffic ticket. *Rodriguez*, 575 U.S. at 354–55. An officer's mission also includes "ordinary inquiries incident to the traffic stop," such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355. (internal quotations and alterations omitted). Finally, because traffic-stops are "fraught with danger to police officers," an officer may take "certain negligibly burdensome precautions in order to complete his mission safely," such as asking for the driver and passenger to exit the vehicle and conducting a criminal record check. *Id.* at 356. Law enforcement must be reasonably diligent in pursuing the mission of the stop, and "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 354, 357.

---

[2] Hale also cites to article I, section 17 of the Idaho Constitution in his appellate brief, but does not make a specific argument relating to that provision thereafter, focusing instead on the Fourth Amendment to the United States Constitution. Since no argument is made with specificity relating to the Idaho Constitution, we limit our analysis to the United States Constitutional question. *See State v. Pylican*, 167 Idaho 745, 750 n.2, 477 P.3d 180, 185 n.2 (2020) (explaining that citation to article I, section 17 of the Idaho constitution, without argument that the provision was violated waives the argument on appeal).

However, measures outside the scope of a traffic stop's mission may not be tolerated under the Fourth Amendment as a "seizure remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop'" *Id.* at 355 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). This is not to say that an officer may not "conduct certain unrelated checks during an otherwise lawful traffic stop[,] [b]ut . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* Accordingly, "[o]n-scene investigation into other crimes . . . [and] safety precautions taken in order to facilitate such detours" are outside the scope of a traffic stop's mission and must be justified by independent reasonable suspicion if they extend the duration of the stop. *See Rodriguez*, 575 U.S. at 356–57 (stating investigation into other crimes is outside the scope of the stop's mission and cannot be justified on that basis); *see also Linze*, 161 Idaho at 608–09 (holding that an officer violated a defendant's Fourth Amendment rights by detouring from the stop's mission to provide back-up for a drug-detecting dog sweep without reasonable suspicion of drug activity). Yet, a traffic stop may be permissibly extended if, during the course of effectuating the stop's mission, officers develop reasonable suspicion of some unrelated criminal offense. *See Pylican*, 167 Idaho at 751–53 (holding that an officer had reasonable suspicion to investigate a defendant's presence at a closed storage facility after initially stopping the defendant for failing to use a turn signal).

Hale concedes that the initial stop of his vehicle was lawful. Thus, our inquiry is exclusively focused on whether the officer's questioning as to Hale's permission to operate the vehicle was within the scope of the traffic stop's mission or purpose. If the questioning was within the scope of the stop's purpose, we need not analyze whether independent reasonable suspicion justified the follow-up questions concerning Hale's permission to operate the vehicle because the constitutional basis for those questions is rooted in the justification for the stop itself.

The district court's ruling below identified three law enforcement concerns that arose during the stop: (1) the initial suspicion that Hale was driving without license plates or a temporary registration permit; (2) the subsequent discovery that Hale could not provide proof of insurance for the vehicle; and (3) Hale's claim that he borrowed the vehicle from the owner with permission. As to the first concern, the district court concluded the suspicion that Hale was driving without license plates or a temporary permit "was dispelled only a few minutes into the stop" because Hale had a temporary permit displayed. Next, with respect to the failure to provide

6

proof of insurance, the district court concluded that "the State ha[d not] proved that Hale's failure to provide proof of insurance, in and of itself, justified [law enforcement] in continuing Hale's seizure all the way up until the canine alert occurred." Thus, the district court homed in on what it considered the critical inquiry: "whether [law enforcement's] desire to verify that Hale had [the owner's] permission to drive the vehicle justified . . . continuing Hale's seizure until then." Concerning that key issue, the district court ruled:

> an officer may, without unlawfully prolonging a traffic stop, take reasonable steps to verify a non-owner driver's claim of permission to drive the stopped vehicle, at least where there is some reason to be skeptical of that claim . . . even if the reasons for skepticism don't rise to the level of a reasonable and articulable suspicion of joyriding or auto theft.

In reaching this conclusion, the district court reasoned that verifying a non-owner driver's permission to operate a vehicle is a permissible ordinary inquiry incident to a traffic stop. On appeal, the Court of Appeals adopted similar reasoning to the district court. *See State v. Hale*, No. 46766, 2020 WL 2465744, at *2–4 (Ct. App. May 13, 2020).

We hold that the officer's questioning regarding Hale's permission to operate the vehicle was an ordinary inquiry incident to the traffic stop. To begin, the list of ordinary inquiries articulated in *Rodriguez* is not exhaustive. *See* 575 U.S. at 355 (providing an open-ended list of *typical* inquiries). Thus, despite Hale's contention that the ordinary inquiries incident to a traffic stop should be limited to the three checks enumerated in *Rodriguez*, there is no definitive list of permissible questions. At any rate, the facts of this case do not require us to delineate the full scope of those ordinary inquiries. Rather, this case only considers whether law enforcement may ask follow-up questions pertaining to the three customary checks described in *Rodriguez*.

To that end, one purpose of an officer checking a driver's license (or, colloquially, an I.D.) is to identify the driver of the vehicle. *See, e.g.*, *State v. Godwin*, 121 Idaho 491, 496, 826 P.2d 452, 457 (1992) ("Running a license check validly fulfills two functions: it allows the officer to correctly identify the person with whom he is dealing and to determine if the license is valid."). In the same vein, one purpose of a registration check is to confirm lawful ownership or possession of a vehicle. *See, e.g.*, *Maier v. Minidoka Cnty. Motor Co.*, 61 Idaho 642, 654, 105 P.2d 1076, 1081 (1940) (noting the well-established rule that registration of a vehicle in a person's name is *prima facie* proof of their ownership of the vehicle). Where, as here, the name appearing on a driver's license is different from the name appearing on the registration, an

7

officer does not stray from the traffic stop's mission merely by following up to determine whether the driver had permission to drive the registered owner's vehicle.

Further, law enforcement in this case also noted a discrepancy between the address information for the owner listed on the registration and the location Hale appeared to indicate the owner lived. Thus, confronted with two mismatched pieces of information—the driver's name versus the registered owner's name *and* the owner's registered address versus his claimed residence—further investigation as to the accuracy of that information was reasonable and served the same purpose as checking a license and registration in the first place. Accordingly, law enforcement did not exceed the scope of the ordinary inquiries incident to a stop by verifying the information provided as part of the license and registration checks.

Our holding does not give law enforcement carte blanche to investigate every piece of information provided as part of a traffic stop ad infinitum while awaiting an inbound drug-detecting canine unit. Rather, the lawful duration of a traffic stop is tethered to "when tasks tied to the traffic infraction are—*or reasonably should have been*—completed." *Rodriguez*, 575 U.S. at 354 (emphasis added). As a result, law enforcement's follow-up questioning concerning the information provided as part of ordinary traffic checks is still measured according to the Fourth Amendment's bedrock requirement of reasonableness, and questions related to those checks that are designed to lengthen a stop rather than verify contradictory information may run afoul of that requirement. For example, if law enforcement conducting a traffic stop exhaustively attempt to verify information provided by a stopped driver, without any reason to do so, the stop likely will be unlawfully prolonged because the tasks related to the stop were not completed in a reasonable amount of time. That being said, where, as here, there is some reason to believe that the information provided during a license, registration, and insurance check is incomplete or inaccurate, a further inquiry to confirm that information (including whether a non-owner driver is in lawful possession of the vehicle) is not, in and of itself, unreasonable or outside the scope of the traffic stop's purpose.

Having held that the inquiry in this case fell within the scope of the stop's purpose, we need not address whether law enforcement had independent reasonable suspicion that Hale was engaging in criminal activity.

8

## V. CONCLUSION

Based on the forgoing, we affirm the district court's order denying Hale's motion to suppress because law enforcement's questioning of Hale concerning his permission to drive the vehicle did not unlawfully prolong the stop.

Chief Justice BEVAN and Justices BRODY, STEGNER, and MOELLER **CONCUR.**