**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49557**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 9, 2023** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| LEONARD LEROY ARMSTRONG, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael J. Reardon, District Judge.

Judgment of conviction for trafficking in methamphetamine, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kiley A. Heffner, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Chief Judge

Leonard Leroy Armstrong appeals from his judgment of conviction for trafficking in methamphetamine. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

At night, officers stopped the vehicle Armstrong was driving for having only one illuminated headlight and no functioning taillights. Upon making contact with one of the officers, Armstrong disclosed that he just purchased the vehicle, but did not reveal his status as a parolee. After collecting Armstrong's driver's license and vehicle title, one of the officers returned to his patrol vehicle to prepare a traffic citation and conduct a records check, which revealed Armstrong's parolee status. While the first officer was completing this process, other officers conducted a dog

1

sniff on Armstrong's vehicle and contacted the on-call parole agent, who indicated Armstrong had absconded from supervision. Pursuant to the on-call parole agent's request, Armstrong was arrested for absconding. During the search incident to arrest, Armstrong admitted he was in possession of a controlled substance. The searches of Armstrong and his vehicle yielded methamphetamine and a digital scale.

The State charged Armstrong with trafficking in methamphetamine, misdemeanor possession of a controlled substance, and a persistent violator sentencing enhancement. Armstrong then filed a motion to suppress, arguing officers unlawfully extended the traffic stop and arrested him for a parole violation without a written agent's warrant. The district court denied Armstrong's motion, concluding officers lawfully extended the stop after discovering Armstrong's parolee status and did not violate his constitutional rights by arresting him without a written agent's warrant. Subsequently, Armstrong entered a conditional guilty plea to trafficking in methamphetamine, I.C. § 37-2732B(a)(4)(A), reserving his right to appeal the denial of his motion to suppress. In exchange for Armstrong's guilty plea, the State dismissed the misdemeanor charge and persistent violator sentencing enhancement. Armstrong appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

"Mindful that the district court's rulings are consistent with the applicable legal standards," Armstrong argues that the district court erred in denying his motion to suppress. Armstrong asserts that officers unlawfully prolonged the traffic stop and arrested him without the written agent's

warrant required under I.C. § 20-227 in violation of the Fourth Amendment and Article 1, Section 17 of the Idaho Constitution.[1] The State responds that Armstrong has failed to show error in the district court's denial of his motion to suppress. Because officers lawfully extended the traffic stop after learning of Armstrong's parolee status and because failure to comply with I.C. § 20-227 does not trigger the exclusionary rule, we hold that the district court did not err in denying Armstrong's motion to suppress.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). In the traffic stop context, authority for a seizure ends when the tasks related to the stop are, or reasonably should have been, completed. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Tasks related to a traffic stop include addressing the traffic violation that precipitated the stop; determining whether to issue a traffic ticket; and making inquiries incident to the traffic stop, such as checking the driver's license, inspecting the vehicle's proof of insurance and registration, and conducting a criminal record check of the driver. *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015); *State v. Hale*, 168 Idaho 863, 867, 489 P.3d 450, 454 (2021). Officers may not deviate from the purpose of a traffic stop by investigating (or taking safety precautions incident to investigating) other crimes without reasonable suspicion. *See Rodriguez*, 575 U.S. at 356.

However, the justification for a motorist's detention is not permanently fixed at the moment the traffic stop is initiated. *State v. Wigginton*, 142 Idaho 180, 183, 125 P.3d 536, 539 (Ct. App. 2005). An officer's observations, general inquiries, and events succeeding the stop may--and often

---

[1] Although Armstrong contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Armstrong's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

do--give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer. *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990). Furthermore, even without reasonable suspicion, officers may engage in lines of investigation unrelated to an otherwise lawful traffic stop as long as doing so does not prolong the stop. *See Caballes*, 543 U.S. at 409 (holding that a dog sniff conducted during an otherwise lawful traffic stop does not violate the Fourth Amendment); *Hale*, 168 Idaho at 867, 489 P.3d at 454 (recognizing the officers may "conduct certain unrelated checks" during a traffic stop).

Although parolees are protected against unreasonable searches and seizures, they have a reduced expectation of privacy which renders government intrusions "reasonable" that might otherwise be unreasonable when applied to other citizens. *State v. Gawron*, 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987). Consequently, parolees may be subject to a warrantless arrest for violating their parole conditions. *See* I.C. § 20-227 (authorizing a parole officer to arrest a parolee without a warrant). Additionally, a parole officer may enlist the aid of other officers to execute such a warrantless arrest. *State v. Ayala*, 164 Idaho 550, 553, 432 P.3d 996, 999 (Ct. App. 2018).

The district court determined that officers lawfully stopped Armstrong's vehicle for equipment violations. While conducting a records check as part of that stop, officers discovered that Armstrong was on parole. The district court concluded this discovery justified further inquiries into Armstrong's parole status. Upon contacting the on-call parole officer, officers at the scene were instructed to detain Armstrong and, once it was confirmed he was absconding, arrest him for a parole violation. Although the officers who arrested Armstrong did not possess a written agent's warrant, the district court determined that Armstrong was properly served with one at the jail. Accordingly, the district court denied Armstrong's motion to suppress.

Armstrong concedes that the initial stop of his vehicle was lawful. Thus, our inquiry focuses on whether the officers extended the stop by engaging in investigative conduct outside the scope of the traffic stop's mission or purpose without justification. "Mindful of the fact that [the officers] learned that Armstrong had been absconding prior to completing the citation," he argues that the officers did so by engaging in "off camera discussions, consultations with each other, training activities, refus[ing] to speak with the former owner to explain the lack of a license plate," and performing the dog sniff. We disagree.

4

The record shows that the officers had not yet completed the purpose of the traffic stop when they learned of Armstrong's parole status and contacted the on-call parole agent. While one officer continued to pursue the purpose of the traffic stop by completing the traffic citations, the other officer contacted the on-call parole agent to verify Armstrong's parole status. The on-call parole agent then advised the officers of Armstrong's absconding status and directed the officers to detain and then arrest Armstrong. Thus, officers at the scene of the traffic stop learned of Armstrong's absconding status and were directed to arrest him while completing the citations and before the purpose of the stop was finished.[2] Accordingly, Armstrong was not subject to an unlawfully extended traffic stop.

Armstrong also asserts that the district court erred by denying his motion to suppress because the officers failed to comply with I.C. § 20-227 by arresting him without possessing a written agent's warrant. Idaho Code Section 20-227 authorizes a parole officer to arrest a parolee or probationer without a warrant. The statute also provides that a parole or probation officer "may deputize any other officer with the power of arrest to do so, by giving such officer a written statement referred to as an agent's warrant." I.C. § 20-227(1).

Although the on-call parole agent notified the officers that Armstrong had absconded and the parole agent intended to issue an agent's warrant for Armstrong's arrest, it is undisputed that Armstrong was arrested and searched before the warrant was received. Nonetheless, Armstrong received a copy of the agent's warrant at the jail. The district court held that this satisfied I.C. § 20-227(1). Even assuming that this procedure did not comply with I.C. § 20-227(1), Armstrong fails to show reversible error by the district court.

Decisions of both the United States Supreme Court and the Idaho Supreme Court establish that the violation of state statutes governing the conduct of a search or arrest does not justify suppression so long as constitutional standards are met. *State v. Branigh*, 155 Idaho 404, 412, 313 P.3d 732, 740 (Ct. App. 2013). This Court has previously rejected the argument that a trial court erred by denying a motion to suppress because officers who were directed by a parole officer to

---

[2]     The on-call parole officer testified during the suppression hearing that she initially requested that officers at the scene detain Armstrong while investigating his absconding status. After confirming that Armstrong was absconding supervision, the on-call parole officer directed the officers to arrest Armstrong.

arrest a parolee for violating parole did so without an agent's warrant. *See Ayala*, 164 Idaho at 553, 432 P.3d at 999. In sum, there is no constitutionally sound basis for us to conclude that Armstrong's arrest, made at the request of the on-call parole agent, was unreasonable and violated the Fourth Amendment because the paperwork, required only by statute, had not been completed. Consequently, Armstrong has failed to show reversible error in the denial of his motion to suppress.

## IV.

## CONCLUSION

Armstrong has failed to show that his initial detention for traffic offenses or subsequent arrest for absconding parole violated the Fourth Amendment. Thus, the district court did not err in denying Armstrong's motion to suppress. Accordingly, Armstrong's judgment of conviction for trafficking in methamphetamine is affirmed.

Judge HUSKEY and Judge BRAILSFORD, **CONCUR**.