# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 51241

| | |
|---|---|
| BRAYDON JOSEPH PEARSON,<br><br>    Petitioner-Respondent,<br><br>v.<br><br>IDAHO TRANSPORTATION<br>DEPARTMENT,<br><br>    Respondent-Appellant. | )<br>)  Filed:  October 22, 2024<br>)<br>)  Melanie Gagnepain, Clerk<br>)<br>)<br>)  THIS IS AN UNPUBLISHED<br>)  OPINION AND SHALL NOT<br>)  BE CITED AS AUTHORITY<br>)<br>)<br>) |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County.  Hon. Mark T. Monson, District Judge.

Decision of the district court, reversing an administrative order suspending a driver's license after failing a blood alcohol test, is <u>reversed.</u>

Hon. Raúl R. Labrador, Attorney General; Mark A. Jackson, Deputy Attorney General, Coeur d'Alene, for appellant.

Blewett, Mushlitz, & Hally, LLP; Jonathan D. Hally, Lewiston, for respondent.

---

MELANSON, Judge Pro Tem

The Idaho Transportation Department (ITD) appeals from a decision of the district court upon judicial review, reversing the ITD's order suspending a driver's license after a failed blood alcohol concentration (BAC) test.  We reverse the decision of the district court.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 2:30 a.m., a police officer stopped a vehicle driven by Braydon Joseph Pearson for exceeding the posted speed limit.  As the officer approached the vehicle, he observed what he described as furtive movements by both Pearson and the front-seat passenger.  Initially, the officer approached the vehicle from the passenger's side and knocked on the rear side window.  The passenger looked back and rolled down his window.  The officer identified himself and

1

explained that the reason for the stop was exceeding the posted speed limit and asked, "Any reason for the speed?" to which the passenger responded, "No." The officer then requested Pearson's driver's license. By that time, the officer noticed an open container of beer near the passenger's feet. The officer asked, "Who's bottle of alcohol is that?" The passenger said it was his and the officer then requested the passenger's identification just as Pearson was handing over his driver's license. The passenger was talkative, and the officer believed that the passenger was trying to divert the officer's attention from Pearson. The officer told the passenger that he was not going to be cited for an open container violation.[1]

At the officer's direction, the passenger then exited the vehicle and poured out the beer. The officer observed that the passenger smelled of alcohol and that the passenger (and a passenger in the back seat who remained in the vehicle and did not interact with the officer) appeared to be intoxicated. The officer also observed that Pearson was not talkative and appeared to be nervous. While the officer and the front-seat passenger were still talking, Pearson handed his proof of insurance and registration to the officer. Approximately four minutes from the beginning of the stop, the officer returned to his patrol vehicle to check the information on Pearson and the passenger and noted that Pearson's insurance was expired. The officer radioed the information to dispatch and began walking back to Pearson's vehicle when a back-up officer arrived.

The officer told the back-up officer that he intended to conduct a driving under the influence (DUI) investigation. More specifically, the officer stated: "I need to pull [Pearson] out. His buddy in the passenger seat . . . had an open container . . . so I had him dump that out, and I just want to make sure that this guy is not 8004."[2] The officer then left Pearson's license, registration and proof of insurance and the passenger's identification in the patrol vehicle. Approximately six minutes from the beginning of the stop, the officer went to Pearson's side of his vehicle. He asked Pearson to exit his vehicle telling him, "I just want to make sure you're not

---

[1]    With some exceptions, I.C. § 23-505 prohibits possession of an open container of an alcoholic beverage by a person in a motor vehicle on a public highway or right-of-way. Violation of the statute is a misdemeanor for the driver of the vehicle and an infraction for passengers.

[2]    An apparent reference to I.C. § 18-8004, which prohibits driving while under the influence of alcohol.

under any influence." After Pearson exited his vehicle, the officer noted numerous signs that Pearson was under the influence, including glassy, red, and watery eyes; an odor of alcohol; slurred speech; and swaying while standing. Pearson failed the field sobriety tests and submitted to a BAC test, which indicated that his blood alcohol level was over the legal limit. The officer charged Pearson with speeding, failure to provide proof of liability insurance, and DUI.

Because Pearson failed the BAC test, his driver's license was administratively suspended by the ITD pursuant to I.C. § 18-8002A. Pearson requested a hearing before an ITD hearing officer and his driver's license suspension was sustained. Pearson appealed to the district court by way of a petition for judicial review. The district court reversed the decision of the hearing officer and held that Pearson's license suspension should be reinstated. The ITD appeals.

## II.

## STANDARD OF REVIEW

The Idaho Administrative Procedures Act (IDAPA) governs the review of ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under the IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Urrutia v. Blaine Cnty., ex rel. Bd. of Comm'rs*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

A court may overturn an agency's decision where its findings, inferences, conclusions, or decisions violate statutory or constitutional provisions; exceed the agency's statutory authority; are made upon unlawful procedure; are not supported by substantial evidence in the record; or are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the

3

agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette Cnty. Bd. of Cnty. Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, it shall be set aside and remanded for further proceedings as necessary. I.C. § 67-5279(3).

## III.

## ANALYSIS

The administrative license suspension (ALS) statute, I.C. § 18-8002A, requires that the ITD suspend the driver's license of a driver who has failed a BAC test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18-8002A(4)(a). A person who has been notified of such an administrative license suspension may request a hearing before a hearing officer designated by the ITD to contest the suspension. I.C. § 18-8002A(7). At the administrative hearing, the burden of proof rests upon the driver to prove any of the grounds to vacate the suspension. I.C. § 18-8002A(7); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension. Those grounds include:

> (a) The peace officer did not have legal cause to stop the person; or
>
> (b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
>
> (c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
>
> (d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or
>
> (e) The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

4

I.C. § 18-8002A(7). The hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Kane*, 139 Idaho at 589, 83 P.3d at 133.

In setting aside Pearson's driver's license suspension, the district court, citing *State v. Linze*, 161 Idaho 605, 389 P.3d 150 (2016) and *State v. Karst*, 170 Idaho 219, 508 P.3d 1148 (2022), ruled that the traffic stop of Pearson for speeding was impermissibly extended when the officer approached Pearson and had him exit his vehicle intending to investigate him for DUI. The district court concluded that "the hearing officer's ultimate determination that [the police officer] possessed legal cause [before Pearson exited his vehicle] to detain [him] for evidentiary testing is in conflict with the 4th Amendment's prohibitions on unreasonable search and seizure and must be reversed." On appeal, the ITD argues that the district court erred in concluding that the officer impermissibly extended the traffic stop.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

However, a traffic stop only remains a reasonable seizure while the officer diligently pursues the purpose of the stop. A traffic stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. *Rodriguez v. United States*, 575 U.S. 348, 350 (2015).

As explained by the Idaho Supreme Court in *Linze:*

5

The United States Supreme Court has plainly established that a traffic stop is a seizure, but it is not an unreasonable seizure under the Fourth Amendment so long as there is reasonable suspicion that the vehicle is being driven contrary to traffic laws. The stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop, to which that reasonable suspicion is related. However, should the officer abandon the purpose of the stop, the officer no longer has that original reasonable suspicion supporting his actions. Indeed, when an officer abandons his or her original purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the Fourth Amendment. This new seizure cannot piggy-back on the reasonableness of the original seizure. In other words, unless some new reasonable suspicion or probable cause arises to justify the seizure's new purpose, the seized party's Fourth Amendment rights are violated when the original purpose of the stop is abandoned (unless that abandonment falls within some established exception).

*Linze*, l6l Idaho at 609, 389 P.3d at 154 (citation omitted). The Court in *Linze* also held:

[T]he United States Supreme Court reached a much broader holding: a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. This rule is both broad and inflexible. It applies to all extensions of traffic stops including those that could reasonably be considered de minimis.

*Id*. at 608, 389 P.3d at 153 (quoting *Rodriguez*, 575 U.S. at 350. However, abandonment of the purpose of the stop by an officer is not what violates the Fourth Amendment. Rather it is the passage of time, even a *de minimis* time, beyond that required for the purpose of the traffic stop which violates the Constitution. As the Idaho Supreme Court has explained:

[t]he officer does not have to "abandon" the mission of the traffic stop for a Fourth Amendment violation to occur. Merely "detouring" (the word used in *Rodriguez*) or "deviating" (the word used in *Linze*) from that mission, even if the delay is *de minimis*, runs afoul of the protections of the Fourth Amendment.

*Karst*, 170 Idaho at 227, 509 P.3d at 1156 (holding delay of nineteen seconds constitutionally impermissible), *overruling State v. Still* 166 Idaho 351, 458 P.3d 220 (Ct. App. 2019).

In *Rodriguez*, the United States Supreme Court held that the mission of a traffic stop has two pillars--to "address the traffic violation that warranted the stop" and to "attend to related safety concerns." *Rodriguez*, 575 U.S. at 354. The Idaho Supreme Court has explained the scope of the mission of a traffic stop "includes, but is not limited to, addressing the traffic violation that precipitated the stop and determining whether to issue a traffic ticket." *State v. Hale*, 168 Idaho 863, 869, 489 P.3d 450, 456 (2021) (holding that questioning defendant regarding his permission to drive vehicle did not unlawfully prolong a stop for failure to display license plates) (citing

6

*Rodriguez*, 575 U.S. at 354-55). During the traffic stop an officer is permitted to make "ordinary inquiries incident to the traffic stop" such as checking the driver's license, registration, and insurance and checking for outstanding warrants. *Rodriguez*, 575 U.S. at 355. For officer's safety, "certain negligibly burdensome precautions" may be taken by the officer such as asking the vehicle occupants to exit and by conducting a criminal background check. *Id*. at 356.

However, authority for the stop ends when "tasks tied to the traffic [stop] are--or reasonably should have been--completed." *Id*. at 354. However, a "seizure remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.'" *Id*. at 355 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). In other words, an officer is not prohibited from making certain unrelated inquiries or performing certain unrelated checks, but the officer may "not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez*, 575 U.S. at 355.

Accordingly, "[o]n-scene investigation into other crimes" and "safety precautions taken in order to facilitate such detours," when extending the duration of the stop, must be supported by their own reasonable suspicion. *Id.* at 356-57 (holding investigation into other crimes is outside the scope of the stop's mission and cannot be justified on that basis); *see also Linze*, 161 Idaho at 608-09, 389 P.3d at 153-54 (holding that an officer violated a defendant's Fourth Amendment rights by detouring from the stop's mission to provide back-up for a drug-detecting dog sweep without reasonable suspicion of drug activity). Conversely, the duration of a stop is permissibly extended when the officer develops reasonable suspicion for a crime distinct from the one precipitating the stop. *See State v. Pylican*, 167 Idaho 745, 477 P.3d 180 (2020) (holding that an officer had reasonable suspicion to investigate a defendant's presence at a closed storage facility after initially stopping the defendant for failing to use a turn signal).

There is no question that the stop of Pearson's vehicle for speeding was prolonged by the officer's interaction with the passenger. That, however, did not *unlawfully* prolong the stop. As soon as the officer saw the open container of beer at the passenger's feet the officer was constitutionally permitted to investigate further and have the passenger exit the vehicle and dispose of the beer. "[A] traffic stop may be permissibly extended if, during the course of effectuating the stop's mission, officers develop reasonable suspicion of some unrelated criminal offense." *Hale*, 168 Idaho at 868, 489 P.3d at 455. The question posed by this case is whether the officer's decision

7

to further prolong the stop to investigate Pearson for DUI detoured or deviated from the mission of the stop thus rendering further delay unconstitutional absent reasonable suspicion that Pearson was driving under the influence. The ITD argues that the officer was permitted to approach Pearson and have him exit the vehicle as part of the mission of the traffic stop, notwithstanding the officer's stated intention to investigate Pearson for DUI. In the alternative, the ITD argues that the officer had independent reasonable suspicion to detain and investigate Pearson for DUI. Pearson argues that the officer did not have legal cause to change the scope of the detention from speeding to DUI.

Citing *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), the ITD argues that the officer was permitted to require Pearson to exit his vehicle as part of the traffic stop without reasonable suspicion of additional illegal activity. Pearson argues that *Mimms* only dealt with the narrow question of whether a driver, once detained, could be required for officer safety to wait outside his or her vehicle while the officer completed the mission of the stop. We need not decide whether the holding in *Mimms* is limited to officer safety concerns or whether an officer's subjective intent in having a driver exit his or her vehicle is relevant. When the officer approached Pearson and asked him to exit his vehicle, the officer had a reasonable suspicion that Pearson was driving under the influence. Therefore, the officer was constitutionally permitted to investigate that crime.

When the officer approached Pearson and told him to exit his vehicle so that the officer could investigate whether Pearson had been driving under the influence, the salient facts known to the officer were: (1) Pearson had been speeding but his driving pattern was otherwise unremarkable; (2) there were furtive movements (not otherwise described) by Pearson and the passenger as the officer approached Pearson's vehicle; (3) there was a full, open bottle of beer at the passenger's feet (claimed by the passenger to be his); (4) the passenger was talkative, and the officer believed the passenger was trying to divert the officer's attention from Pearson; (5) both passengers appeared to be under the influence; and (6) Pearson was not talkative and appeared to be nervous.

The Idaho Supreme Court has explained that an officer's reasonable suspicion to conduct an investigatory detention depends on the totality of the circumstances known to the officer at the time of the stop. *State v Maahs*, 171 Idaho 738, 745, 525 P.3d 1131, 1138 (2023) (citations omitted). More than an inchoate and unparticularized suspicion or hunch is required. *Id*. Rather,

specific, articulable facts and reasonable inferences drawn from those facts are required. *Id*. It may well be that none of the facts observed by the officer prior to approaching Pearson would have been sufficient alone to lead to a reasonable suspicion that Pearson was driving under the influence, but all of the facts known to the officer, taken together, lead to that conclusion. Because the officer developed a reasonable suspicion of another offense after the stop, he was constitutionally permitted to prolong the stop in order to investigate that offense. A traffic stop may be permissibly extended if, during the course of effectuating the stop's mission, officers develop reasonable suspicion of some unrelated criminal offense. *Hale*, 168 Idaho at 868, 489 P.3d at 455.

The officer lawfully stopped Pearson for speeding. The officer's interactions with the passenger after the stop did not unlawfully extend the stop because the officer observed a separate offense (open container of alcohol in a motor vehicle) and was lawfully permitted to investigate that offense. By the time the officer approached Pearson and had him exit his vehicle, the officer had reasonable suspicion to investigate whether Pearson had been driving under the influence separate from the initial purpose of the stop. Accordingly, the district court erred on judicial review in reversing Pearson's driver's license suspension.

## IV.

## CONCLUSION

Pearson failed to show that the ITD erred in a manner specified in I.C. § 67-5279(3). Therefore, the decision of the district court on judicial review is reversed. As the prevailing party, costs are awarded to the ITD on appeal.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.

9