**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52498**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed:  May 20, 2026** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JIM RAY CLARKE, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Cynthia Yee-Wallace, District Judge.

Judgment of conviction for trafficking in methamphetamine or amphetamine and misdemeanor driving under the influence, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Stacey M. Donohue, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Neil Paterson, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge Pro Tem

Jim Ray Clarke appeals from his judgment of conviction for trafficking in methamphetamine or amphetamine and misdemeanor driving under the influence (DUI).  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

A law enforcement officer was on patrol when he observed Clarke speeding.  The officer initiated a traffic stop and Clarke admitted he was driving too fast.  The officer noticed that Clarke's lips were "somewhat whitened," his eyes were glassy and red, his pupils were constricted, and at times his fingers were fidgety.  After Clarke provided the officer with Clarke's license and registration, the officer asked Clarke to exit the vehicle.  Clarke consented to a pat-down search

1

and no weapons were found. The officer then requested that Clarke wait near the patrol vehicle's front bumper. While reviewing Clarke's information, the officer requested a drug dog. Before issuing a written warning for speeding, the officer asked Clarke to sit in the patrol vehicle's front passenger seat.

In the patrol vehicle, the officer asked Clarke about the cause of the symptoms the officer observed and whether Clarke had used drugs recently or in the past. Clarke admitted he used methamphetamine, heroin, and fentanyl that morning. The officer completed the written warning and told Clarke he was being detained for an investigation. After being informed of his *Miranda*[1] rights, Clarke also admitted there was fentanyl in his vehicle and gave the officer permission to retrieve it. Soon thereafter, the canine unit officer arrived with a drug dog and performed a drug-detection sniff. The drug dog alerted on the vehicle and the officers found methamphetamine, fentanyl, heroin, and marijuana. Clarke was arrested and subjected to field sobriety tests and a drug detection evaluation at the jail.

Clarke was charged with trafficking in methamphetamine or amphetamine, trafficking in heroin, possession of marijuana, possession of a controlled substance (fentanyl), possession of drug paraphernalia, and DUI. Clarke filed a motion to suppress, arguing that the officer lacked reasonable suspicion to extend the traffic stop.[2] Following a hearing on the motion, the district court denied Clarke's motion to suppress. Clarke subsequently entered conditional guilty pleas to trafficking in methamphetamine or amphetamine (I.C. § 37-2732B(a)(4)) and misdemeanor DUI (I.C. § 18-8004), specifically reserving his right to appeal the denial of his motion to suppress. As part of the plea agreement, the State dismissed the additional charges. Clarke appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1996).

[2]     In his motion to suppress, Clarke also argued that his *Miranda* rights had been violated. However, Clarke does not present this argument on appeal, so we do not address it.

as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Clarke asserts that the district court erred in denying his motion to suppress. Specifically, Clarke argues that, because the officer did not have reasonable suspicion to detain Clarke and investigate possible drug use, the traffic stop was unlawfully extended. The State responds that the record and applicable law support the district court's denial of Clarke's motion to suppress. We hold that Clarke has failed to show the district court erred in denying his motion to suppress.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). In the traffic stop context, authority for a seizure ends when the tasks related to the stop are, or reasonably should have been, completed. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Tasks related to a traffic stop include addressing the traffic violation that precipitated the stop; determining whether to issue a traffic ticket; and making inquiries incident to the traffic stop, such as checking the driver's license, inspecting the vehicle's proof of insurance and registration, and conducting a criminal record check of the driver. *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015); *State v. Hale*, 168 Idaho 863, 867, 489 P.3d 450, 454 (2021). Officers may not deviate from the purpose of a traffic stop by investigating (or taking safety precautions incident to investigating) other crimes without reasonable suspicion. *See Rodriguez*, 575 U.S. at 356. The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or

3

instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

However, the justification for a motorist's detention is not permanently fixed at the moment the traffic stop is initiated. *State v. Wigginton*, 142 Idaho 180, 183, 125 P.3d 536, 539 (Ct. App. 2005). An officer's observations, general inquiries, and events succeeding the stop may--and often do--give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer. *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990). Furthermore, even without reasonable suspicion, officers may engage in lines of investigation unrelated to an otherwise lawful traffic stop as long as doing so does not prolong the stop. *See Caballes*, 543 U.S. at 409 (holding that a dog sniff conducted during an otherwise lawful traffic stop does not violate the Fourth Amendment); *Hale*, 168 Idaho at 867, 489 P.3d at 454 (recognizing the officers may "conduct certain unrelated checks" during a traffic stop).

In this case, the district court determined the officer had reasonable suspicion to extend the traffic stop and further investigate Clarke's possible drug use. The officer testified that he worked in law enforcement for approximately twenty years, that he was working as a narcotics deputy, and that he was previously a drug-recognition evaluator. The district court found the officer's testimony credible and, combined with his bodycam footage, established that extending the stop was justified. The district court determined that "the stop was justified based upon [the officer's] reasonable suspicion that . . . Clarke was under the influence of a controlled substance and may not [have been] safe to operate a motor vehicle." The record shows that during the traffic stop, the officer observed Clarke's "glassy, red eyes, constricted pupils, white around his lips, cotton mouth, and [that he] was fidgety." The district court found that the "facts articulated by [the officer], relying on and together with his law enforcement experience in recognizing outward signs of drug use, reasonably justified his suspicion that Clarke was potentially under the influence of a controlled substance and possibly in possession of drugs." The district court concluded that, based on the totality of the circumstances, the officer had reasonable suspicion to extend the traffic stop.

On appeal, Clarke does not challenge the initial detention and agrees with the State that the officer had reasonable suspicion to stop Clarke for speeding. Instead, "mindful" of the district

court's factual findings and credibility determinations, Clarke contends that the officer impermissibly prolonged the traffic stop without having the requisite reasonable suspicion to do so. According to Clarke, the officer's "body camera footage does not provide evidence to support most of [the officer's] claims." Thus, Clarke asserts that the district court erred by denying his motion to suppress. We disagree.

The record shows that the officer had not yet completed the purpose of the traffic stop when he witnessed some of the facts that gave rise to his reasonable suspicion that Clarke may have been driving while under the influence. Clarke argues that the officer did not have reasonable suspicion because, contrary to the officer's testimony, his bodycam footage shows that Clarke's "eyes are very white--not red or bloodshot," that his pupils are not "constricted," and that his eyes are not "glassy." However, the record shows that the officer observed these symptoms and the district court found the officer's testimony credible. The district court properly considered the officer's testimony in conjunction with his bodycam footage. Having viewed the bodycam footage, we cannot say that the district court's findings were not supported by substantial evidence. Clarke also argues the officer did not testify that Clarke "was incoherent, agitated, unsteady, or had any other common symptoms suggesting drug use, and [the officer] did not subject [Clarke] to a field sobriety test at the scene." That the officer did not conduct field sobriety tests during the traffic stop does not negate the officer's reasonable suspicion based on the information available to him as the stop continued. The district court properly concluded that the officer's law enforcement experience in recognizing outward signs of drug use, together with his observations of Clarke's symptoms, was sufficient to support a reasonable suspicion that Clarke was under the influence and made the officer's continued investigation into possible drug possession lawful.

## IV.

## CONCLUSION

Based on the totality of the circumstances, the officer had reasonable and articulable suspicion to investigate Clarke for driving under the influence and possible drug possession following the initial traffic stop. We conclude that Clarke has failed to show the district court erred in denying his motion to suppress. Accordingly, Clarke's judgment of conviction for trafficking in methamphetamine or amphetamine and DUI is affirmed.

Chief Judge TRIBE and Judge LORELLO, **CONCUR**.

5